PROSKAUER ROSE LLP
Allan H. Weitzman (7926)
11 Times Square
New York, New York 10036
T: (561) 995-4760
F: (212) 969-2900
aweitzman@proskauer.com
Attorneys for Petitioners



**15 CV 5215**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

CROSS COUNTRY CONSTRUCTION;          :
ROGERS & SONS CONCRETE, INC.;        :
SORBARA CONSTRUCTION CORP.;          :
HUNTER GC L.L.C.; PARK AVENUE        :
CONCRETE; PINNACLE INDUSTRIES        :
II, LLC; REGAL USA CONCRETE, INC.,   :
                                     :
                     Petitioners,    :
                                     :     15 Civ. _____ (___)
        - against -                  :
                                     :     (Filed as a related case to
                                     :        90 Civ. 5722 (RMB))
THE DISTRICT COUNCIL OF NEW YORK     :
CITY AND VICINITY OF THE UNITED      :
BROTHERHOOD OF CARPENTERS AND        :
JOINERS OF AMERICA,                  :
                                     :
                     Respondent.     :
-------------------------------------------------------------------X

## PETITION TO TEMPORARILY AND PERMANENTLY ENFORCE ARBITRATION AWARD

Petitioners Cross Country Construction, Rogers & Sons Concrete, Inc., Sorbara

Construction Corp., Hunter GC L.L.C., Park Avenue Concrete, Pinnacle Industries II, LLC, and

Regal USA Concrete, Inc. ("Collectively "Petitioners") seek confirmation of arbitration awards

entitled "Cease and Desist Consent Order" for violation of no strike prohibitions against

Respondent, The District Council of New York City and Vicinity of the United Brotherhood of

Carpenters and Joiners of America (the "Respondent" or the "Union"), and temporary and permanent enforcement in conformity therewith.

## Summary of Petition

This is a petition filed pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-13, to confirm and enforce arbitration awards entered on July 2, 2015, in accordance with Project Labor Agreements ("PLAs"), which are subject to the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185.

## Parties and Jurisdiction

1.      The Cement League is a New York not-for-profit corporation, engaged as a trade association and multiemployer bargaining agent for its members, who are New York City area construction industry high-rise concrete superstructure contractors (the "Members"). (See Declaration of Michael Salgo ("Salgo Decl.").) (Factual references throughout are to the Salgo Decl.)

2.      The Cement League's principal place of business is 49 West 45th Street, New York, New York.

3.      Cross Country Construction, a member of the Cement League, is the contractor at 220 Central Park South, is an entity that performs services relating to construction projects at issue here in New York City and who is an employer within the meaning of Section 2(2) of the LMRA, 29 U.S.C. § 152(2).

4.      Sorbara Construction Corp., a member of the Cement League, is the contractor at two sites (56 Leonard Street and One West End), is an entity that performs services relating to construction projects at issue here in New York City and who is an employer within the meaning of Section 2(2) of the LMRA, 29 U.S.C. § 152(2).

5.      Rogers & Sons Concrete, Inc., a member of the Cement League, is the contractor at World Trade Center Tower 3, is an entity that performs services relating to construction projects at issue here in New York City and who is an employer within the meaning of Section 2(2) of the LMRA, 29 U.S.C. § 152(2).

6.      Hunter GC L.L.C. is the construction manager at 43-25 Hunter Street, is an entity that performs services relating to construction projects at issue here in New York City and who is an employer within the meaning of Section 2(2) of the LMRA, 29 U.S.C. § 152(2).

7.      Park Avenue Concrete, a member of the Cement League, is the contractor at two sites (Avalon Willoughby Square and Hunter Street), is an entity that performs services relating to construction projects at issue here in New York City and who is an employer within the meaning of Section 2(2) of the LMRA, 29 U.S.C. § 152(2).

8.      Regal USA Concrete, Inc., a member of the Cement League, is the contractor at Riverside Center Building Two, is an entity that performs services relating to construction projects at issue here in New York City and who is an employer within the meaning of Section 2(2) of the LMRA, 29 U.S.C. § 152(2).

9.      Pinnacle Industries II, LLC, a member of the Cement League, is the contractor at 551 Tenth Avenue, is an entity that performs services relating to construction projects at issue here in New York City and who is an employer within the meaning of Section 2(2) of the LMRA, 29 U.S.C. § 152(2).

10.     Respondent, the Union, maintains its principal place of business in New York, New York. The Union is a labor organization representing employees in this judicial district in industries affecting commerce within the meaning of Section 2(5) of the LMRA, 29 U.S.C. § 152(5).

11.     The arbitration awards that are the subject of these proceedings for confirmation and enforcement arose from and were rendered pursuant to PLAs within the meaning of the Labor-Management Relations Act, 29 U.S.C. § 185.

12.     This Court has jurisdiction over these proceedings pursuant to Section 301(a) of the LMRA, 29 U.S.C. § 185 and the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*

13.     Venue is proper in this District pursuant to Section 301(a) of the LMRA, 29 U.S.C. § 185 because Petitioners and Respondent are located in the District and the events giving rise to this action occurred within this District.

## Facts

14.     Petitioners and Respondent are parties to PLAs.  The PLAs cover work being performed at the specified work sites in the New York City area.

15.     The PLAs are currently in effect.

16.     The PLAs contain a "Work Stoppages and Lockouts" provision.  Article 7, Section 1 which, in relevant part, provides that:

> There shall be no strikes, sympathy strikes, picketing, work stoppages, slowdowns, handbilling, demonstrations, or other disruptive activity on Project Work for any reason by any union against the Owner/Developer, Construction Manager, and Contractors or other employers.[1]

17.     Cement League Members perform work under PLAs covering Union represented carpenter employees.  Those Members and the Union are bound by the PLAs.  The PLAs are in effect until the building projects they cover are "substantially completed."

18.     Beginning on July 1, 2015, the Union and its members have engaged in conduct in violation of Article 7, Section 1 at the work sites covered by the above-referenced PLAs.

---

[1] The language in the PLA between Petitioner World Trade Center Tower 3 and Respondent is slightly different but substantively the same – "There shall be no strikes or other unlawful disruptive activity under the PLA."

19.     On July 1, 2015, pursuant to Article 7, Section 3 of the PLAs, the Petitioners sent letters to the Union informing it of the strikes in violation of the PLAs and requested its support to immediately stop such violations.

20.     Article 7, Section 4 of the PLAs provides for "Expedited Arbitration" to resolve alleged violations of the "Work Stoppages and Lockouts" provision.

21.     On July 1, 2015, Pursuant to Article 7, Section 4(a) of the PLAs, counsel for the Members made demands for expedited arbitration to Arbitrators Adelman and Scheinman seeking relief from the Union's work stoppage in violation of the PLAs.

22.     On July 2, 2015, Respondent, by its counsel, consented to the entry of a "Cease and Desist Consent Order" for all sites.

23.     In relevant part, the "Cease and Desist Consent Order[s]" provide:

ORDERED, that the Union, its officers, agents, representatives, members, and employees, having notice from any source or in any manner of the issuance of this Consent Order be and hereby are:

(1) enjoined and restrained from calling, causing, inducing, encouraging, authorizing, conducting, continuing in or engaging in any strike, sympathy strikes, picketing, work stoppages, slowdowns, handbilling, demonstrations, or disruptive activity, of any kind on work covered by the PLA against the Owner, Construction Manager, and Contractors or other employers including, without limitation, any and all of their (and their affiliated or related entities) owners, directors, principals, representatives, stockholders and employees;

(2) enjoined and restrained from interfering with or inducing or attempting to induce any person to interfere with any employee or agent of the Employers in the course of any such employee's or agent's work for the Employers; and

(3) the Union, its officers, agents and representatives are directed to take all reasonable means to communicate and effectuate the provisions of this Consent Order, including but not limited to the holding of meetings with employees represented by the Union and the issuance forthwith of appropriate notices or other communications to the members, officers, and agents of the Union, and all those in active concert with them, requiring the immediate return to work of all employees of the Employers represented for collective bargaining purposes by the Union.

5

24.     Article 7, Section 4 of the PLAs, state that the arbitration award "may be enforced by any court of competent jurisdiction upon the filing of this Agreement together with the Award." It also provides that the Union has "waived its right to a hearing" on a temporary or preliminary order, and "agree[s] that such [judicial enforcement] proceedings may be ex parte, provided notice is given to opposing counsel."

25.     While the Union purports to be making efforts to get its members back to work on PLA jobs, its efforts are simply ineffective or are being ignored (*i.e.*, a "wink and a nod") – thus requiring expedited judicial intervention to enforce the Arbitrator's Orders.

26.     Carpenters have been on strike and have not reported to work on Petitioners' sites since June 30, 2015 – despite the explicit no strike promise in the PLAs. As the Carpenters have ignored the Arbitrators' Orders at other sites, Petitioners cannot lose another day of work on Monday, July 6, 2016.

27.     Construction operations run on an extremely tight and precisely orchestrated schedule. Valuable goodwill and client relationships have been developed over a period of years as a result of prompt, on-time, efficient and high quality construction services.

28.     If Respondent's activities are allowed to continue, Petitioners will suffer permanent and irreparable damage and injury in the form of lost goodwill, diminished client confidence with regard to prompt on-time and consistent construction services, possible loss of new jobs, and loss of revenue and profit.

29.     There is no adequate remedy at law and, unless a temporary restraining order is issued, irreparable injury will continue.

30.     Petitioners will suffer more from the denial of an injunction than will the Union from its issuance; further, the Union will suffer no injury if a temporary restraining order and

injunction are issued because the Union can seek relief through the parties' agreed-upon grievance-arbitration procedure under the PLAs.

31.    Respondent has not sought to vacate, modify, or challenge the Arbitration Awards.

32.    Petitioners are entitled to confirmation and enforcement of the "Cease and Desist Consent Orders" in conformity therewith pursuant to the LMRA, 29 U.S.C. § 185, and §§ 9 & 13 of the FAA.

WHEREFORE, Petitioners pray that this Court: (i) enter judgment confirming and enforcing the July 2, 2015 "Cease and Desist Consent Orders" and (ii) providing Petitioners with such other and further relief as the Court deems proper.

Dated: New York, New York
        July 4, 2015

Respectfully submitted,

Allan H. Weitzman (7926)
PROSKAUER ROSE LLP
11 Times Square
New York, New York 10036
Telephone:  (561) 995-4760
Facsimile:  (212) 969-2900
aweitzman@proskauer.com
Attorney for Petitioners

7